**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

DANIEL CANCELMO, on behalf of himself and all others similarly situated,

Plaintiff,

- v -

SOUTHERN NEW HAMPSHIRE MEDICAL CENTER, SOUTHERN NEW HAMPSHIRE HEALTH SYSTEM, INC., and SOLUTIONHEALTH

Defendants.

Civil Action No: 1:24-cv-00245

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
Todd S. Garber* (#4129300) (NY)
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
tgarber@fbfglaw.com

**WEINTRAUB LAW, LLC**
Adam H. Weintraub (# 275047)
170 Commerce Way, Suite 200
Portsmouth, New Hampshire 03801
Telephone: (603) 212-1785
Facsimile: (504) 708-4512
aweintraub@ahwfirm.com

*Attorneys for Plaintiff and the Putative Class*

**Admitted Pro Hac Vice*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

FACTUAL ALLEGATIONS ........ 3

ARGUMENT ........ 5

A. Standard of Review ........ 5

B. Plaintiff Has Pleaded A Claim For Privacy Violations Under RSA 332-I ........ 5

i. The Complaint Sufficiently Alleges That SNHH Discloses PHI To Google Via Google Analytics ........ 5

ii. The Disclosure of PHI Here Was For Marketing ........ 10

iii. The Disclosure Was Unauthorized And Without Notification ........ 12

iv. Defendant's Other Arguments On This Claim Also Fail ........ 12

C. Plaintiff Successfully Pleads Claims Under RSA 570-A ........ 14

i. The Alleged Website Interactions Are Telecommunications ........ 15

ii. Website Interactions Were Intercepted By Defendants ........ 19

iii. Defendants' Inherent Consent Argument Fails ........ 23

CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AHA v. Becerra*,
No. 23-01110, 2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024) .......... 8

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 5

*B.K. v. Desert Care Network*,
No. 23-05021, 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024) .......... 7

*B.K. v. Eisenhower Med. Ctr.*,
No. 23-2092, 2024 U.S. Dist. LEXIS 35721 (C.D. Cal. Feb. 29, 2024) .......... 13, 14

*Brahm v. Hosp. Sisters Health Sys.*,
No. 23-444, 2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) .......... 7

*Cooper v. Mount Sinai Health Sys., Inc.*,
No. 23-9485, 2024 U.S. Dist. LEXIS 134570 (S.D.N.Y. July 30, 2024) .......... 11

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 8, 22

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 8

*Cousin v. Sharp Healthcare*,
No. 22-2040, U.S. Dist. LEXIS 48697 (S.D. Cal. Mar. 18, 2024) .......... 8-9

*Doe v. Amgen, Inc.*,
No. 23-07448, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) .......... 9

*Doe v. Davita Inc.*,
No. 23-01424, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) .......... 12

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 19

*Gay v. Garnet Health*,
No. 23-06950, 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sep. 16, 2024) .......... 11

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) .......... 17

*Howard v. Lab'y Corp. of Am.*,
No. 23-00758, 2024 U.S. Dist. LEXIS 174067 (M.D.N.C. Aug. 8, 2024) .......... 19

*In re Facebook, Inc. Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 24

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 18

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
934 F.3d 316 (3d Cir. 2019) .......... 24

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935, 2022 U.S. Dist. LEXIS 115023 (N.D. Cal. June 13, 2022) .......... 18

*In re Grp. Health Plan Litig.*,
No. 23-267, 2023 U.S. Dist. LEXIS 227218 (D. Minn. Dec. 21, 2023) .......... 11

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 17

*J.C. v. Cath. Health Sys. Inc.*,
No. 23-00796, 2024 U.S. Dist. LEXIS 155939 (W.D.N.Y. Aug. 29, 2024) .......... 8

*Kane v. Univ. of Rochester*,
No. 23-6027, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) .......... 11

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 21

*Langadinos v. Am. Airlines, Inc.*,
199 F.3d 68 (1st Cir. 2000) .......... 1

*M.G. v. Therapymatch, Inc.*,
No. 23-04422, 2024 U.S. Dist. LEXIS 166534 (N.D. Cal. Sep. 16, 2024) .......... 17, 20

*M.R. v. Salem Health Hosps. & Clinics*,
No. 23-01691, 2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024) .......... 6-7

*McCulley v. Banner Health*,
No. 23-00985, 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) .......... 7

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 23-01159, 2024 U.S. Dist. LEXIS 86167 (W.D. Wash. May 13, 2024) .......... 13

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .......... 20

*Revitch v. New Moosejaw, LLC*,
No. 18-06827, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .......... 15, 23

*Roe v. Amgen Inc.*,
No. 23-07448, 2024 WL 2873482 (C.D. Cal. June 5, 2024) .................................................. 9

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .................................................................................. 21

*Smith v. Google, LLC*,
No. 23-03527, 2024 U.S. Dist. LEXIS 98367 (N.D. Cal. June 3, 2024) ......................... 19, 20

*Smith v. Loyola Univ. Med. Ctr.*,
No. 23-15828, 2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024) ................................ 11

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-00667, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ............................... 7

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ..................................................................................... 9

*State v. Moscone*,
161 N.H. 355 (2011) ....................................................................................................... 22, 23

*State v. Lott*,
152 N.H. 436 (2005)...................................................................................... 15, 21, 22, 23

*State v. MacMillan*,
152 N.H. 67, 872 A.2d 1031 (2005) ...................................................................................... 22

*Sutter Health v. Superior Court*,
227 Cal. App. 4th 1546 (2014) ................................................................................................ 9

*Toy v. Life Line Screening of Am. Ltd.*,
No. 23-04651, 2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) ......................... 7, 20

*United States v. Barrington*,
648 F.3d 1178 (11th Cir. 2011). ............................................................................................. 19

*United States v. Budovsky*,
No. 13-00368, 2016 U.S. Dist. LEXIS 13050 (S.D.N.Y. Jan. 28, 2016) .............................. 10

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) .................................................................................. 19

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................................................. 20

**Statutes/Regulations**

18 U.S. Code § 2510 .............................................................................................................. 17

45 C.F.R. §164.514 ................................................................................................................... 4

California Penal Code § 631 ..................................................................................................... 1

N.H. Rev. Stat. Ann. § 332-I ........................................................................ 1, 2, 4, 5, 6, 9, 10, 12
N.H. Rev. Stat. Ann. § 570-A ................................................ 1, 2, 3, 4, 14, 15, 16, 17, 19, 21, 22
Confidentiality of Medical Information Act Section 56.10 ......................................................... 9
Confidentiality of Medical Information Act Section 56.101 ....................................................... 9

Plaintiff Daniel Cancelmo respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss filed by Defendants Southern New Hampshire Medical Center, Southern New Hampshire Health System, Inc., and SolutionHealth (collectively, "SNHH" or "Defendants").

## INTRODUCTION

There is no greater trust than that of safeguarding private medical information disclosed by an individual to a medical provider. It is difficult to think of a more sensitive type of information, where privacy is more valued. This case involves the unlawful interception and disclosure of protected health information ("PHI") entrusted to SNHH, in violation of New Hampshire privacy and wiretapping laws. As alleged in the Complaint,[1] SNHH is a system of hospitals and medical centers that is intercepting and disclosing website visitors' PHI to Google for marketing purposes without authorization or notification. This is being done in violation of two New Hampshire statutes governing the privacy of health information and wiretapping.

First, New Hampshire's PHI statute requires healthcare providers and their business associates to obtain authorization for any disclosure of PHI for marketing purposes. N.H. Rev. Stat. Ann. ("RSA") § 332-I:4. This law also requires healthcare providers to promptly notify persons whose PHI has been disclosed. RSA 332-I:5. SNHH takes no actions whatsoever to obtain authorization or provide notification for the disclosure of PHI.

Second, New Hampshire's wiretapping statute provides a civil cause of action for "[a]ny person whose telecommunication or oral communication is intercepted…in violation of this chapter." RSA 570-A:11. Specifically, the New Hampshire wiretapping and eavesdropping

---

[1] For a motion to dismiss, the Court must accept all factual allegations in the claim as true and draw all reasonable inferences in the claimant's favor. *See Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

statute makes it unlawful to willfully: (1) intercept "or endeavor to intercept, any telecommunication or oral communication," or (2) use "or endeavor to use, any electronic, mechanical, or other device to intercept any oral communication," noting that the interception of communication is unlawful if intercepted without "the consent of all parties to the communication...." RSA 570-A:2. SNHH intercepts highly sensitive medical information without consent.

The Complaint sufficiently alleges facts of Defendants' unauthorized PHI disclosure and their failure of notification of such disclosure that establish a plausible claim for relief under RSA 332-I. *See* Compl. ¶¶ 16-41, 58-69. Defendants' claims to the contrary are utterly without merit. First, Defendants' reliance on a recent decision from the Northern District of Texas is entirely misplaced as this decision is neither controlling nor persuasive. Second, Defendants are wrong in claiming that Plaintiff has failed to make sufficiently individualized allegations as the Complaint is replete with individualized allegations. Third, Defendants' argument that Plaintiff does not sufficiently allege a disclosure based on a viewed/accessed standard applies the wrong standard as a disclosure is sufficiently alleged based on the correct standard of sharing PHI outside of the entity that holds the information. Fourth, Defendants' contention that the Complaint fails to allege that the PHI disclosures were done "for marketing" is completely misguided as Plaintiff repeatedly and sufficiently alleges that the disclosure is for marketing, and even provides several examples. *See* Compl. ¶¶ 39, 65-67.

Plaintiff also sufficiently alleges facts that establish a plausible claim to relief for unlawful wiretapping under RSA 570-A. First, Defendants' suggestion that they can escape liability because they use a "tracking device" to collect and disclose information to Google, and are therefore somehow excluded from the statute's liability, is a red herring because the means

used by Defendants does not erase the fact of their intentional interception and communications to Google. Second, Defendants oddly assert that no "interception" takes place because of a postulated "in transmission" requirement, missing the fact that is not a requirement under New Hampshire law. Third, Defendants cannot seek to narrow the statutory definition of "contents" found in RSA 570-A with inapposite and uncontrolling case authority. Fourth, the "inherent consent" standard that Defendants seek to apply to Plaintiff unambiguously applies exclusively to online messaging and does not apply here.

## **FACTUAL ALLEGATIONS**

SNHH offers a website that allows people to search for physicians, medical institutions, and services, through which website users can input information, often PHI, to find providers, obtain medical information, pay for services, and more. *See* Compl. ¶ 2. Plaintiff and Class Members are current, former, or prospective patients of SNHH who used SNHH's website. *See* Compl. ¶ 19. When using the website, users often input their medical information, including private and confidential information regarding their medical conditions and treatment. *See* Compl. ¶ 3. Unbeknownst to patients, SNHH is surreptitiously intercepting and disclosing PHI to Google, without their consent. *Id*. PHI at issue here includes but is not limited to:

- The types of medical treatment patients are seeking;
- The name, gender, and specialty of the physician(s) with whom patients are seeking treatment;
- When the patient logs in to the patient portal;
- General searches made by patients on the site's search bar.

*See* Compl. ¶¶ 5, 21.

The interception and disclosure of PHI to Google is facilitated using Google Analytics, a web analytics service that enables website owners to track visitor actions on their websites and subsequently target them with personalized advertisements. *See* Compl. ¶ 24. Google Analytics, an online analytics tool that discloses myriad user interactions with a website to Google, allows a website operator to "[u]nderstand how [one's] customers interact across [one's] sites and apps, throughout their entire lifecycle."[2] Crucially, Google Analytics also intercepts and discloses the Internet Protocol ("IP") addresses of website visitors and couples them with the tracked website interactions. *Id.* An IP address is a number that identifies a specific device connected to the Internet. *See* Compl. ¶ 22. Under HIPAA, an IP address is considered personally identifiable data. *See* Compl. ¶ 23; 45 C.F.R. §164.514(b)(2)(i)(0). PHI, in the form of interactions with SNHH's website, is shared with Google and is personally identifiable. *See* Compl. ¶ 39.

Google Analytics offers website owners an opt-in IP anonymization feature. *See* Compl. ¶ 25. According to Google, this feature is designed to help website owners comply with their privacy policies and the recommendations of data protection authorities. *Id.* SNHH fails to take the simple step of opting in to IP anonymization. *See* Compl. ¶ 28. Also, Google Analytics inherently functions for marketing objectives related to advertising and content personalization. *See* Compl. ¶ 65. The presence of active campaigns on Google Ads establishes a direct connection between SNHH's data-sharing practices and its ongoing marketing efforts. *See* Compl. ¶ 66. SNHH's Terms of Use ("Terms") acknowledge the use of Google AdWords for remarketing. *See* Compl. ¶ 30. It follows that disclosures to Google via Google Analytics are being made for marketing purposes. *See* Compl. ¶ 39. Altogether, by using Google Analytics

[2] *Google Marketing Platform*, https://marketingplatform.google.com/about/analytics/ (last visited Oct. 24, 2024).

without the anonymized IP feature, SNHH is intercepting and sharing PHI with Google for marketing, without user authorization or notification for such disclosures. *See* Compl. ¶ 29. These actions constitute violations of RSA 332-I and RSA 570-A as explained below.

## ARGUMENT

### A. Standard of Review.

A motion to dismiss fails where a plaintiff has made factual allegations sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from a plaintiff's allegations, and deny a motion to dismiss if the claim is plausible. *See Id.*

### B. Plaintiff Has Pleaded A Claim For Privacy Violations Under RSA 332-I.

The Complaint adequately pleads a claim that SNHH, without authorization or notification, discloses PHI to a third-party for marketing purposes.

#### i. The Complaint Sufficiently Alleges That SNHH Discloses PHI To Google Via Google Analytics.

Defendants argue that the Complaint does not sufficiently allege that a legally recognizable disclosure occurred, or that PHI as they define it was included in such disclosures. RSA 332-I provides that PHI has the same meaning as set forth under HIPAA. *See* RSA 332-I:1(II)(a)(4); Compl. ¶ 59. The U.S. Department of Health and Human Services ("HHS") bulletin offers clear directives regarding the use of online tracking tools by HIPAA-covered

entities when it comes to PHI, and what qualifies as PHI. *See* Compl. ¶ 61. Per these directives, when regulated entities such as SNHH operate unauthenticated public webpages ("UPWs") involving patients' PHI, HIPAA Rules govern the tracking and disclosure of PHI to technology vendors. *Id.* Because SNHH, a regulated entity, is disclosing PHI to Google, HIPAA Rules apply. *See* Compl. ¶ 62. Examples of PHI collected from UPWs covered under the HIPAA definition of PHI include:

- Individuals' login information or registration information for the login portal;
- Unauthenticated webpages that address specific symptoms or health conditions;
- Patient searches for available appointments.

*Id.* Accordingly, patients' logins, searches for available appointments, and searches on SNHH's website qualify as PHI. *Id.*

Plaintiff alleges, with ample descriptions and images demonstrating how this process functions, that Defendants disclose these types of PHI to Google. *See* Compl. ¶¶ 32-41, 67. A website visitor's search for a doctor is disclosed to Google via Google Analytics. *See* Compl. ¶¶ 32-34. When a website visitor logs in and registers to book an appointment, that information is collected and disclosed to Google. *See* Compl. ¶¶ 35-36. Anything a website visitor submits through the website's search bar is collected and disclosed to Google. *See* Compl. ¶¶ 37-38. All these disclosures are combined with a website visitor's IP address. *See* Compl. ¶ 39. In this way, SNHH is disclosing patients' PHI coupled with their IP address to Google using Google Analytics and disclosing their highly private information without permission. *Id.*

***Analogous Cases Confirm Plaintiff Sufficiently Pleads PHI Disclosure***

Numerous cases involving substantially similar facts show that courts treat these allegations as sufficient to state a claim. *See, e.g. In M.R. v. Salem Health Hosps. & Clinics*, No.

6:23-cv-01691-AA, 2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024) (holding plaintiff plausibly alleged PHI disclosure where defendant healthcare provider embedded Google Analytics on its website, resulting in transmission of patient IP addresses and information related to health conditions, desired medical treatments, and searches for physicians); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) (denying motion to dismiss where defendant embedded Google Analytics on its website, facilitating the transmission of website interactions that disclosed users' IP addresses to Google along with their website activity that "plausibly relate[d] to the provision of healthcare, or . . . connect[ed] a particular user to a particular healthcare provider...") (quoting *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2024 WL 2133709, at *3 (W.D. Wash. May 13, 2024)); *McCulley v. Banner Health*, No. CV-23-00985-PHX-SPL, 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) (denying a motion to dismiss a Confidentiality of Medical Information Act ("CMIA") claim based on allegations that defendant healthcare entity disclosed browsing history—coupled with IP addresses—to Google related to symptoms, treatment options, and types of providers, and holding such counts as a disclosure of PHI); *B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024) (denying a motion to dismiss a similar claim based on disclosure of healthcare website interactions as they revealed medical history, diagnosis, or care); *Brahm v. Hosp. Sisters Health Sys.*, No. 23-cv-444-wmc, 2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) (denying a motion to dismiss an invasion of privacy claim for disclosure of PHI, and holding the sharing of PHI with Google qualified as such a disclosure); *Toy v. Life Line Screening of Am. Ltd.*, No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) (denying a motion to

dismiss breach of confidence and invasion of privacy claims, holding the sharing of website interactions constituted an unlawful disclosure of PHI).

***Defendants' Arguments On What Qualifies As A PHI Disclosure Fail***

Defendants rely on *AHA v. Becerra*, No. 4:23-cv-01110-P, 2024 U.S. Dist. LEXIS 108847 (N.D. Tex. June 20, 2024) in arguing that an IP address, coupled with information about specific health conditions or healthcare providers, does not qualify as PHI under HIPAA. *See* Def. Mem. at 4. This is not so. *Becerra* is an outlier opinion with reasoning that is not in line with most courts to address this issue faced with substantially similar facts.

*J.C. v. Cath. Health Sys. Inc.*, No. 1:23-cv-00796 (JLS) (JJM), 2024 U.S. Dist. LEXIS 155939 (W.D.N.Y. Aug. 29, 2024) also dealt with the disclosure of PHI to a third-party stemming from healthcare website interactions. It explicitly rejected the reasoning of *Becerra* as unpersuasive and not controlling. *Id.* The *J.C.* court declined "to find that the types of disclosures alleged in plaintiff's complaint [regarding interactions with a UPW combined with an IP address] are not…PHI protected by HIPAA." *Id*. at *41. This Court must do the same.

Other cases cited by Defendants are also readily distinguishable. Significantly, Defendants conveniently neglect to detail that following the initial motion to dismiss ruling in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023), plaintiffs repleaded their claims, and defendants' motion to dismiss was ultimately denied in relation to the CMIA and California Invasion of Privacy Act ("CIPA") wiretap claims. *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. 2023). The court held that plaintiffs' filtering of the physicians' directory by specialty, searching for doctors specializing in their conditions, and searching for information about their conditions "plausibly convey[ed] information about a present medical condition and the provision of medical care covered by HIPAA." *Id*. at 973. Although this

decision was later vacated for unrelated jurisdictional reasons, the reasoning still stands and conforms with HHS guidance and myriad courts that have considered the same issues. *See Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA-DDL, 2024 U.S. Dist. LEXIS 48697 (S.D. Cal. Mar. 18, 2024) (vacating prior orders).

Defendants also suggest there was no disclosure due to a posited viewed/accessed standard. In citing *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 923 (S.D. Cal. 2020), Defendants claim that a plaintiff must prove their "information was improperly viewed or accessed by the recipient of the information" for a disclosure to occur. *See* Def. Mem. at 9. This represents a complete misreading of *Stasi* as the case simply does not say this. Essentially, Defendants confused which CMIA sections are applicable to the present case.

The "viewed or accessed" language comes from the section of *Stasi* discussing CMIA Sections 56.101(a) and 56.36(b). *Stasi*, 501 F. Supp. 3d at 923. These provisions are not analogous to RSA 332-I:4, and instead discuss breach of confidentiality and damages.[3] Section 56.10(a), which like RSA 332-I:4 prohibits the disclosure of PHI without prior authorization, was discussed separately. *Id*. at 922. This discussion made no mention of a "viewed or accessed" requirement, and instead only explained that to plead a violation, a plaintiff must allege an "affirmative communicative act" by a defendant. *Id*. The *Stasi* court cited to *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546 (2014) in holding that affirmative communicative acts refer to "giving out medical information on a patient." *Id.* at 1554. That is exactly what happened here, as Defendants gave out medical information on patients to Google

[3] "Unlike section 56.10, which prohibits disclosure of medical information except under specified circumstances, section 56.101 refers to the broader duties of the health care provider with respect to the confidentiality of the medical information." *Sutter Health v. Superior Court*, 227 Cal. App. 4th 1546, 1556 (2014).

by using Google Analytics as described herein. The same reasoning applies to the other cases Defendants cite[4] to read a non-existent viewed/accessed requirement into RSA 332-I:4.

**ii. The Disclosure of PHI Here Was For Marketing.**

***Plaintiff Sufficiently Pleads The Disclosure Was For Marketing***

RSA 332-I:4 specifies that for the unauthorized disclosure of PHI to be prohibited, it must be done "for marketing." Google Analytics inherently functions for marketing objectives, leveraging data from websites for advertising and content personalization. *See* Compl. ¶ 65; *United States v. Budovsky*, No. 13cr00368 (DLC), 2016 U.S. Dist. LEXIS 13050, at *19 (S.D.N.Y. Jan. 28, 2016) ("Google Analytics is a marketing tool…"). There would be no point in Defendants using Google Analytics if not for marketing, as otherwise they would receive no benefit for doing so. For this reason alone, an allegation of the use of Google Analytics for disclosures of PHI is a sufficient factual allegation of a disclosure for marketing. Defendants seem to completely miss this straightforward logic.

Defendants admit directly that disclosures are for marketing. The fact that visitor website interactions are shared with Google for marketing purposes is explicitly provided for in SNHH's Terms. *See* Compl. ¶ 30. The Terms acknowledge the use of Google AdWords remarketing services, detailing an intent to retarget website visitors. *Id.* The Terms state that a person's "past visits to [SNHH's] website" are used by third-party vendors such as Google to "serve ads."[5] Logically, the only way Google could use information gleaned from past visits to the website is if SNHH is providing such information. This is a bald admission by Defendants of using Google

[4] *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024); *Doe v. Amgen*, Inc., No. 2:23-CV-07448-MCS-SSC, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024).

[5] *Terms of Use,* https://www.snhhealth.org/terms-of-use (last visited Oct. 24, 2024).

to provide ads based on visitors' browsing history and reinforces the fact that SNHH intentionally shares PHI for marketing purposes. The presence of active campaigns on Google Ads therefore establishes a direct connection between SNHH's data-sharing practices and its ongoing marketing efforts. *See* Compl. ¶ 66. The advertisements pictured below Compl. ¶ 66 are targeted based on certain interactions with the website. They demonstrate a connection between the collection and disclosure of website use by Google Analytics, and advertising by SNHH using Google Ads. These kinds of advertisements could not exist without the disclosures described herein.

Analogous cases also demonstrate that Plaintiff sufficiently pleads the "for marketing" element of this claim. *See, e.g.*, *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) (holding that substantially similar allegations of PHI disclosures combined with a fact-based allegation "that [the] Defendant disclosed this information to enhance its marketing efforts," was sufficient to plausibly allege the knowing unauthorized disclosure of PHI "for marketing purposes"); *Cooper v. Mount Sinai Health Sys., Inc.*, 2024 U.S. Dist. LEXIS 134570, at *23 (S.D.N.Y. July 30, 2024) (denying a motion to dismiss on the basis that plaintiff plausibly alleged the transmission of PHI to Google was done at least in part "for marketing purposes," and the relevant tracker was embedded on defendant's site to facilitate targeted marketing campaigns); *In re Grp. Health Plan Litig.*, No. 23-cv-267 (JWB/DJF), 2023 U.S. Dist. LEXIS 227218, at *21-22 (D. Minn. Dec. 21, 2023) (denying a motion to dismiss similar claims pursuant to fact-based allegations that the primary motivation for the disclosure to third party software companies was for marketing); *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 U.S. Dist. LEXIS 119995, at *18 (N.D. Ill. July 9, 2024) (denying a motion to dismiss in part based on finding plausible allegations that similar collection

and disclosure of PHI to Google was used for targeted marketing); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 U.S. Dist. LEXIS 168515, at *13 (S.D.N.Y. Sep. 16, 2024) (following the reasoning in the *Kane* decision).

**iii. The Disclosure Was Unauthorized And Without Notification.**

On the authorization element, Plaintiff alleges, and it is not disputed by Defendants, that the disclosure was done without authorization or consent. *See* Compl. ¶ 67. The same goes for the notification element in RSA 332-I:5. *See* Compl. ¶ 67. SNHH violates RSA 332-I:4 because it fails to obtain authorization or provide notification for the disclosure of PHI to Google.

It is true that SNHH's Terms contain language stating it uses Google remarketing services. *See* Compl. ¶ 30. However, website visitors are not required to consent to the Terms, nor are they presented with the Terms as they browse. *Id.* To view the Terms, one must scroll to the bottom of the page and select the Terms hyperlink, which is displayed in smaller font than almost all other webpage text. *Id*. The presence of the Terms link at the bottom of the webpage cannot be construed as constituting authorization or notification. The fact that SNHH does not even try to suggest the Terms constitute notice/authorization speaks volumes.

**iv. Defendants' Other Arguments On This Claim Also Fail.**

Defendants also argue that the case should be dismissed because "Plaintiff is unable to actually allege that their own supposedly protected information was shared by a defendant via the plaintiff's use of a public website," and because "Plaintiff fails to specify what of his own information was allegedly shared." *See* Def. Mem at 6, 8.

In relation to the first argument, Defendants cite *Doe v. Davita Inc.*, No. 23-CV-01424-AJB-BLM, 2024 WL 1772854, at *1 (S.D. Cal. Apr. 24, 2024), where the court rejected claims devoid of facts supporting the allegation that PHI was collected and disclosed. *Davita* (and the

other cases cited to support the same contention) are distinguishable from this case because Plaintiff does allege facts regarding information being disclosed to Google, including by providing images of the source code that made the disclosure possible. *See* Compl. ¶ 34, 36, 38, 40, 41. Specific to Plaintiff, the source code below Compl. ¶ 34 supports a plausible allegation that his information was collected and disclosed. It demonstrates precisely the process by which information on a patient's search, as Plaintiff alleges he carried out in Compl. ¶ 20, is collected and disclosed to Google. In contrast, the cases cited by Defendant involved vague allegations that disclosures took place, without supporting facts.

Defendant's second argument is also unavailing. Plaintiff does specify what information was allegedly disclosed—namely, searches for medical providers and their contact information related to allergy clinics and dermatology services. *See* Compl. ¶ 20. Plaintiff's specificity distinguishes this case from those cited by Defendant. SNHH references *Nienaber v Overtake Hosp. Med. Ctr.*, but there, the court found it crucial that the plaintiff made "no allegations as to the type of information she provided to Defendant." No. 2:23-cv-01159-TL, 2024 U.S. Dist. LEXIS 86167, at *10 (W.D. Wash. May 13, 2024). As noted, Plaintiff here alleges the type of information provided. The same applies to Defendants' misguided citations to *B.K. v. Eisenhower Med. Ctr.*, No. EDCV232092JGBKKX, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024), and *Okash v. Essentia Health*, 2024 WL 1285779, at *5 (D. Minn. Mar. 26, 2024), which involved plaintiffs that failed to allege the type of information disclosed. *See* Def. Mem. at 7.

Also, other courts have rejected motions to dismiss when the plaintiff provided even less information. *See, e.g.*, *Doe v. Universal Hosps. Health Sys., Inc.*, No. CV-20-933357, Order Denying Defendant's Motion to Dismiss, (Ohio C.P. Nov. 16, 2020) ("Plaintiff pleads that she is a patient of University Hospitals who communicated with the hospital through its website about

specific conditions, appointments, and providers. Similarly, she alleges that she exchanged communications with the hospital through the patient portal. Although she fails to identify specific protected information or data allegedly disclosed to third parties, one may fairly infer from the allegations of the complaint that transmission of [her] private data is at least plausible.") (internal citations omitted).

Defendants also advance a handful of additional arguments, none of which are compelling. *See* Def. Mem. at 8. First, this case is not based on "an unidentified hypothetical user." *Id.* This case is based on a real Plaintiff, Daniel Cancelmo, who possesses concrete claims, and Defendants completely ignore the allegations specific to Plaintiff as discussed above. Second, Defendants suggest that Plaintiff makes no allegations regarding authenticated or non-public pages. *Id.* This carries no weight, as the allegations in this case largely concern website interactions on UPWs, which are covered by HIPAA as already explained. *See* Compl. ¶ 61. Additionally, website interactions after a patient logs in are covered by complaint allegations. *See* Compl. ¶ 36. Third, SNHH suggests that the Complaint contains no allegations regarding how data was used, what information was shared, and time frame, which SNHH implies are requirements per recent cases. *See* Def. Mem. at 8. As described above, Plaintiff does allege this information, and SNHH fails to cite any of the cases from this supposed recent "wave."

**C. Plaintiff Successfully Pleads Claims Under RSA 570-A.**

RSA 570-A:11 states that "[a]ny person whose telecommunication or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses, or uses… such communications…" Plaintiff, in describing how telecommunications were intercepted, alleges that the interceptions are committed in violation of RSA 570-A:2, which makes it a crime when a person, without the

consent of all parties, "(a) Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any telecommunication or oral communication." Plaintiff alleges that by embedding Google Analytics on its website, SNHH is disclosing and facilitating Google's access to this information without authorization, thus intercepting the patients' communications within the statute's definition. *See* Comp. ¶ 75. In other words, SNHH is using Google Analytics as a device to willfully intercept website interaction telecommunications in violation of New Hampshire wiretap law.

**i. The Alleged Website Interactions Are Telecommunications.**

Per the statutory definition, "'Telecommunication' means the transfer of any form of information in whole or in part through the facilities of a communications common carrier." RSA 570-A:1(I). The statute's application to internet communications, though drafted in 1988, is supported by evolving legal interpretations. *See* Compl. ¶ 72. Website visitors' online activity on SNHH's website falls within the statute's definition of telecommunication. *See* Compl. ¶ 73.

***Website Interactions Are Covered Telecommunications***

Substantial authority confirms internet activities are covered by this statute. In *State v. Lott*, the court extended the statute to cover instant messaging, recognizing computers and messaging programs as both communication tools and potential recording devices. 152 N.H. 436, 879 A.2d 1167 (2005). Other courts have asserted that online activities such as searching for a doctor or requesting appointments online are the contemporary equivalent to a traditional telephone interaction (*i.e.*, the type of activity the statute was designed to protect). *See, e.g., Revitch v. New Moosejaw*, LLC, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *1 (N.D. Cal. Oct. 23, 2019) (sustaining a wiretap law violation because website owner permitted tracking

technology on its website, the equivalent of allowing "an outsider to tap his telephone or listen in on the call") (internal citations and quotations omitted).

These legal precedents underscore a clear trend toward applying the statute to internet communications, ensuring its relevance in the digital era. Considering these interpretations, the term "telecommunication" may extend to electronic communications, including internet tracking. Activity on SNHH's website, including pages accessed and links clicked, is considered private communication, and by embedding Google Analytics, SNHH facilitates Google's access to this information without authorization.

***Defendants Arguments On This Element Fail Because Google Analytics Is Not A "Tracking Device" And The Contents of Communication Plaintiff Alleges Are Covered by Statute***

Defendants point to language in RSA 570-A:1(I) that excludes communication "from a tracking device" from its definition of "telecommunication." They suggest that Plaintiff's claim is therefore null by arguing that Plaintiff pleads that Google Analytics was a tracking device. *See* Def. Mem. at 13. This argument fails for several reasons.

First and most importantly, Defendants ignore the fact that the statute only excludes communications which come "*from* a tracking device." RSA 570-A:1(I) (emphasis added). Nowhere does Plaintiff claim, nor do Defendants suggest, that the communications at issue come *from* the supposed tracking device, Google Analytics. That would be nonsensical. Instead, Plaintiff alleges that communications that originated from himself and other similarly situated patients are *intercepted by* Google Analytics. *See* Compl. ¶ 75. Curiously, Defendants themselves cite that the Complaint describes how information is disclosed *through* the use of Google's embedded tracking technology, not communications *from* it. *See* Def. Mem. at 13

(referencing Compl. ¶ 43). In other words, there are no communications originating from Google Analytics, and Defendants' argument for exclusion fails for this reason alone.

SNHH also suggests the contents of communications alleged are not covered by the statute. Defendants cite to Electronic Communications Privacy Act ("ECPA") and CIPA cases to suggest that the requirements of RSA 570-A:2(I)(c) are not met because the contents of communication, as defined in RSA 570-A:1(VII), do not cover the contents at issue in this case. *See* Def. Mem. at 15-16. First, these cases are inapposite because the identical definitions of "contents" in ECPA and CIPA are more restrictive than the definition of "contents" in RSA 570-A. The former define "contents" as including "any information concerning the substance, purport, or meaning of that communication." 18 U.S. Code § 2510(8). RSA 570-A defines "contents" as "any information concerning the *identity of the parties to such communication or the existence*, substance, purport, or meaning of that communication." RSA 570-A:1(VII) (differing language emphasized). Therefore, Defendants' citations to *In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) and other cases dealing with the ECPA and CIPA are not at all persuasive. *See* Def. Mem. at 15-16. This is especially true for the references to identity information (such name, address, and subscriber identity) and information concerning the existence of a communication (such as origin, length, time of communication, and geolocation data), as those are explicitly covered by RSA 570-A:1(VII). *See* Def. Mem. at 15.

Defendants also suggest that "keystrokes, copy and paste actions, and search terms," are not covered contents. *See* Def. Mem. 16. However, the case they cite to support this argument, *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318 (S.D. Fla. 2021) involved the ECPA, and is therefore inapplicable for the above reasons.

And even if the court were to follow the ECPA/CIPA definition, the "contents" at issue here would be covered. In *M.G. v. Therapymatch, Inc.*, a CIPA case related to disclosures by a healthcare website via Google Analytics, the Court found that "information [plaintiff] provided about the mental health conditions for which he was seeking therapy, his provider preferences, and his appointment details…is content information." No. 23-cv-04422-AMO, 2024 U.S. Dist. LEXIS 166534, at *12 (N.D. Cal. Sep. 16, 2024). Other courts have adopted similar interpretations. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (finding a search term or similar communication made by the user, as well as log-in buttons, qualifies as covered contents under the Wiretap Act); *In re Google RTB Consumer Priv. Litig.*, No. 21-cv-2155-YGR, 606 F. Supp. 3d 935, 2022 U.S. Dist. LEXIS 115023, at *10 (N.D. Cal. June 13, 2022) (finding information describing content categories on a site, details about the content within, and information about pages visited constituted "content").

It should be noted that Defendants do not even attempt to suggest that other types of contents outlined in the Complaint, such as types of medical treatment that patients are seeking; the name, gender, and specialty of physician(s) with whom patients are seeking treatment; and other log-in data, are not covered under the statute's definition of content. *See* Def. Mem. 15-16; Compl. ¶ 21. This is likely because it is beyond debate that these contents are directly concerning the substance, purport, and meaning of the communication.

Defendants also cite cases dismissing wiretap claims where plaintiffs' claims lacked specificity and argue that Plaintiff failed to adequately allege the substance of his communications or what information he specifically searched for. *See* Def. Mem. at 16. However, as noted above, Defendants seem to miss that Plaintiff specifically alleges that he searched for medical providers related to the allergy clinic and dermatology services. *See* Compl. ¶ 20. Additionally, courts have

found that plaintiffs are not required at this stage to provide specific communications for their wiretap claims to survive a motion to dismiss. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 816 (N.D. Cal. 2020) ("[T]he Court rejects Defendants' suggestion that Plaintiffs must identify specific communications that Plaintiffs reasonably believed to be private and that were wrongly recorded. The Court is not convinced that Plaintiffs are required to produce such details at the pleading stage, prior to discovery.").

**ii. Website Interactions Were Intercepted By Defendants.**

***Plaintiff Sufficiently Pleads An Interception***

The statute defines "intercept" as "the aural or other acquisition of, or the recording of, the contents of any telecommunication or oral communication through the use of any electronic, mechanical, or other device." RSA 570-A:1(III). Plaintiff, by describing how Google Analytics functions in detail, specifically alleges that website interactions containing PHI are intercepted by SNHH via Google Analytics.

***Analogous Cases Demonstrate Plaintiff Sufficiently Pleads The Interception Element, Including The Device Requirement***

First, precedent indicates the "device" element is met because Google Analytics qualifies as the type of device contemplated by the statute. Courts have held that software can count as an intercepting device in the wiretap context. *United States v. Barrington* held that if the software is capable of contemporaneously capturing information and transmitting it beyond the user's computer (as is the case with Google Analytics), it is a wiretapping device. 648 F.3d 1178, 1203 (11th Cir. 2011). In fact, "[t]he majority of courts to consider this issue have entertained the notion that software may be considered a device," in the wiretap context. *See United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases).

Other courts have also found specifically that website interaction tracking software plausibly qualifies as a "device" and denied motions to dismiss wiretap claims. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) (finding "Pixel," Meta's equivalent to Google Analytics, "…is a device under [CIPA]," ); *Smith v. Google, LLC*, No. 23-cv-03527-PCP, 2024 U.S. Dist. LEXIS 98367, at *20-22 (N.D. Cal. June 3, 2024) (rejecting a motion to dismiss a CIPA claim, which was based on Plaintiff's allegation that Google Analytics is a "device" under the wiretap law); *Howard v. Lab'y Corp. of Am.*, No. 1:23-CV-00758, 2024 U.S. Dist. LEXIS 174067 (M.D.N.C. Aug. 8, 2024) (holding code from Google Analytics that interacts with a server is a device in the wiretap context); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 n.8 (3d Cir. 2022) (assuming code directing communications to a server is a wiretap "device").

Addressing the interception element, courts applying wiretap laws have found that Google Analytics does "intercept." This is true specifically in the context of healthcare websites employing the tool. In *M.G. v. Therapymatch, Inc.*, the plaintiff alleged Google Analytics violated CIPA by intercepting communications with defendant's website, including those related to searches for conditions, treatments, and provider appointment details. 2024 U.S. Dist. LEXIS 166534, at *3. The court denied defendant's motion to dismiss, finding plausible the allegation that Google Analytics embedded software does "intercept" in the wiretap context. *Id.* at *13-15.

Cases affirming the idea that Google Analytics and similar tracking technologies "intercept" website interactions in the wiretap context are legion. *See Toy v. Life Line Screening of Am. Ltd.*, No. 23-cv-04651-RFL, 2024 U.S. Dist. LEXIS 88872, at *3 (N.D. Cal. Mar. 19, 2024) (denying a motion to dismiss a CIPA claim and finding that allegations of using Google Analytics to collect website interactions involving PHI constituted an interception); *Smith v.*

*Google, LLC*, No. 23-cv-03527-PCP, 2024 U.S. Dist. LEXIS 98367, at *20 (N.D. Cal. June 3, 2024) ("At the pleading stage, plaintiffs have plausibly alleged that Google [Analytics] intercepted communications that were confidential under [the wiretap statute]"); *M.R.*, U.S. Dist. LEXIS 155513, at *12-14 (denying a motion to dismiss and finding plausible that Google Analytics intercepts internet communications); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (finding a wiretap statute violation as website owner incorporated tracking technology that permitted a third party to "intercept" the user's behavior on that website); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) (denying motion to dismiss a wiretap claim where Nike "intercepted" interactions on its site including keystrokes).

***Defendants Arguments On This Element Fail As They Cite Inapplicable Cases***

Defendants cite several cases dealing with the ECPA and CIPA for the proposition that, for a communication to be considered intercepted, the interception must take place during transmission. *See* Def. Mem. at 14. While this may be true for ECPA/CIPA claims, this is not true for claims under RSA 570-A. Defendants' citations are inapposite.

Defendants cite two cases dealing with ECPA claims. *See* Def. Mem. at 14-15. Defendants are correct in their assertions that under the ECPA, an intercept must take place during transmission. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878-89 (9th Cir. 2002). Defendants also cite three cases dealing with CIPA claims. *See* Def. Mem. at 14-15. CIPA per California Penal Code § 631 contains language stating only communications "in transit" are covered. *See* Cal. Penal Code § 631. The obvious flaw with these citations is that Plaintiff is making a claim under RSA 570-A, not the ECPA or CIPA. RSA 570-A:1(III)'s definition of "intercept" does not contain the "in transit" language found in CIPA. There is no

caselaw indicating that the term "intercept" in RSA 570-A, as is the case with ECPA, is interpreted to imply a "during transmission" requirement.

In fact, the caselaw suggests that an interception need not take place during transmission for it to be covered by RSA 570-A. *See State v. Lott*, 152 N.H. 436, 879 A.2d 1167 (2005). In *Lott*, a case dealing with the interception of instant messages, the court stated that:

> [w]hen the defendant sent an instant message to Warchol, that instant message was immediately received by Warchol, recorded by the Yahoo! IM program and/or Warchol's computer, and displayed in both the defendant's and Warchol's chat windows. As Warchol recorded the defendant's telecommunication with his computer and/or computer instant messaging program…his action fits perfectly within the statutory definition of 'intercept' [under RSA 570-A]

*Lott*, 152 N.H. at 1170. The intercept of the telecommunication did not take place during transmission, instead it took place after the message was received and presumably stored, when Warchol recorded it on his computer. *Id*. This logic was also followed in *State v. MacMillan*, 152 N.H. 67, 872 A.2d 1031 (2005), where the court upheld a lower court holding that the use of a program that cut and pasted on-screen dialogue into a word-processing document qualified as an interception under RSA 570-A. *Id*. at 1034, 1036. Cutting and pasting on-screen dialogue necessarily means the interception occurred after transmission. Both cases demonstrate that under RSA 570-A, an intercept does not need to take place during transmission or in transit, and instead can take place post-transit/transmission.

Even if the court were to apply the "in transit" requirement, it would be met here. *See e.g.*, *M.G,* 2024 U.S. Dist. LEXIS 166534, at *15 (N.D. Cal. Sep. 16, 2024) (finding for a similar Google Analytics healthcare website wiretap claim that "the interception occurred *in transit*…") (emphasis added); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *5 ("Revitch began each communication by pressing a button…causing one signal to travel to his computer and then through his browser to Moosejaw's server…that intervention happened while the signal was

already in transit from Revitch's device."); *Cousin v. Sharp Healthcare*, 681 F.Supp.3d at 1130-31 (finding communications were intercepted "in transit" by website tracking technology).

**iii. Defendants' Inherent Consent Argument Fails.**

Defendants suggest, citing *Lott* and *State v. Moscone*, 161 N.H. 355 (2011), that Plaintiff consented to the interception of his communications because Internet users are aware online communications are likely if not necessarily being recorded. *See* Def. Mem. at 19. For the reasons explained below, Plaintiff did not inherently consent to interception of his written internet communications, because the logic of *Lott* and *Moscone* on this point is specific to instant messaging, and not internet usage generally. Defendants' argument misses this key point.

In *Lott*, the court, in concluding that the defendant consented to the intercept of his instant messaging, found it crucial that during instant messaging the words typed remain on the screen. *Lott*, 152 N.H. at 1170-71. Key to the court's conclusion on this matter was that "[l]ike an e-mail message and a message left on an answering machine, the recording of the instant message is necessary for the intended recipient of that message to read the message." *Id.* at 1172. This does not apply to interactions with a website such as Defendants', as Google Analytics' recording of users' interactions with this website is not necessary for the website to function. The court in *Moscone* was explicit that this inherent consent is specific to instant messaging when it stated that "[w]e addressed the consent exception in *Lott* and held that, *due to the nature of instant messaging technology*, the defendant consented to the recording of his instant message communications." 161 N.H. at 364 (emphasis added). If the court in *Moscone* had instead said "due to the nature of using the Internet," Defendants might have a point. But it did not. Thus, Defendants' assertion that these cases stand for the proposition that people inherently consent to the interception of all communicative Internet activity is misguided.

Finally, Defendants, without citation, suggest that inherent consent applies here because it is "inherent in the functioning of the internet and HTTP protocol that underlies all web traffic," that all Internet communications are capable of being recorded. *See* Def. Mem. 16. Defendants provide no explanation for how that means Plaintiff inherently consented to his website interactions being intercepted. This point was addressed in *Lott*, where the court stated that the key differentiator in that case was that the recording of instant messages by the instant messaging program was known by the users. *Lott*, 152 N.H. at 1171. Defendants do not allege that Plaintiff was aware that his website interactions were being recorded by Google Analytics. *See* Compl. ¶ 75. Furthermore, courts have rejected the idea that one inherently consents to all Internet activity being intercepted. *See In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316 (3d Cir. 2019) (finding Internet users have a reasonable expectation of privacy in internet communications); *In re Facebook, Inc. Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (same). Defendants' inherent consent argument fails.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court reject Defendants' Motion to Dismiss. However, if the Court were to rule in favor of dismissal on any of the above, Plaintiff requests the opportunity to amend.

Dated: November 1, 2024

Respectfully Submitted,

By: /s/ Todd S. Garber
Todd S. Garber (#4129300) (NY)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
tgarber@fbfglaw.com

By: *<u>/s/ Adam H. Weintraub</u>*
Adam H. Weintraub (# 275047)
**WEINTRAUB LAW, LLC**
170 Commerce Way, Suite 200
Portsmouth, New Hampshire 03801
Telephone: (603) 212-1785
Facsimile: (504) 708-4512
aweintraub@ahwfirm.com

*Attorneys for Plaintiff and the Putative Class*

**Admitted Pro Hac Vice*