**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| DANIEL CANCELMO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>- v -<br><br>SOUTHERN HEW HAMPSHIRE MEDICAL CENTER, SOUTHERN NEW HAMPSHIRE HEALTH SYSTEM, INC., and SOLUTIONHEALTH<br><br>Defendants. | Civil Action No: 1:24-cv-00245 |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

Plaintiff Daniel Cancelmo's ("Plaintiff") opposition primarily focuses on citing opinions from other jurisdiction where, according to him, similar claims under different statutes were allowed (while attempting to ignore cases in those same jurisdictions rejecting such claims). In doing so, he largely ignores the arguments SNHH raised pertaining to the actual allegations made in the Complaint here and pertaining to the language of the statutes in question. He concedes that the only reason he believes any identifiable health information was involved here is because the IP address of a ***device*** was allegedly disclosed. He doubles down on his belief that this argument is valid because of a prior HHS Guidance Bulletin which has been vacated – and essentially no longer exists. Perhaps sensing that shortcoming, Plaintiff also attempts to assert a "content neutral" claim under the New Hampshire wiretap act. Decisions from both the New Hampshire Supreme Court and Massachusetts Supreme Judicial Court ("SJC"), however, make it clear that his website browsing activity is not a "telecommunication." In any event, Plaintiff offers no counter to SNHH's argument that his own allegations show nothing was "intercepted." For all of the reasons discussed below and in SNHH's initial brief, Plaintiff's Complaint should be dismissed.

## I. Plaintiff's Allegations Do Not Plead a Disclosure of PHI for Marketing

Plaintiff's insistence that the IP address of a device used to browse a public website constitutes identifiable information is meritless, and he offers nothing in his Complaint or opposition showing that an IP address identifies a person, or to explain how that could be the case when his Complaint itself alleges only that it identifies a device. Moreover, Plaintiff fundamentally misreads the marketing requirement of the statute, which requires that a defendant must have disclosed information for the purpose of encouraging the recipient of that information to purchase a product. Plaintiff repeatedly asserts that SNHH disclosed information to Google, but does not (and almost certainly cannot) argue SNHH was encouraging Google to buy anything at all, instead hoping the clear language of the statute will be obfuscated by his allegation that in general SNHH engages in online advertising.

### A. The IP address of a device does not constitute identifiable health information

Plaintiff's opposition brief concedes that his argument rests on the premise that the browsing activity of a visitor to a public page on SNHH's website constitutes ***individually identifiable*** health information because that browsing activity is associated with a device IP address. Astoundingly, he doubles down on his reliance on an HHS Guidance Bulletin to support that argument, despite the fact that guidance was ***vacated*** before his complaint was even filed. *Am. Hosp. Ass'n v. Becerra*, __ F. Supp. 3d __, 2024 WL 3075865 (N.D. Tex. June 20, 2024). Plaintiff's suggestion that *Becerra* is an "outlier" and should be rejected completely misses the mark, and fundamentally misunderstands what was addressed there. *Becerra* was not addressing a claim akin to the one Plaintiff attempts to make here – it was directly addressing whether the HHS guidance was valid. In deciding it was not, the court vacated that guidance, meaning it has no effect. This is especially true given that HHS withdrew its appeal of the decision. Moreover, Plaintiff doggedly relies almost exclusively on the guidance despite the fact that "HHS seemed to acknowledge the Original

Bulletin went too far, as the Revised Bulletin confirms that the [combination of browsing activity with an IP address], by itself, does not constitute IIHI." *Id.* at *7. In short, the guidance upon which Plaintiff concedes his entire argument relies has been vacated and effectively does not exist.

Moreover, Plaintiff's citation to a post-*Becerra* decision from the Western District of New York, actually undermines his position. *J.C. v. Catholic Health Sys.*, No. 1:23-CV-00796 (W.D.N.Y. Aug. 29, 2024).[1] In *J.C.*, the plaintiff similarly alleged the defendant disclosed medical information through use of website analytics tools, though her only cause of action was an alleged violation of the Electronic Communications Privacy Act ("ECPA"), not a healthcare specific statute, as Plaintiff attempts to assert here. *Id.* As an initial matter, the court there agreed with the defendant's argument and determined the complaint should be dismissed. *Id.* Therefore, Plaintiff's concession that his allegations here are similar to those in *J.C.*, seems to also be a concession that they are insufficient pursuant to that court's reasoning. Moreover, that case in fact emphasized that an IP address is not enough to make health information individually identifiable stating, "The allegations here involve disclosure of potential IIHI ***along with an individual's Facebook ID***, which very specifically identifies an actual individual, and not a device. No speculation at all is needed to connect an individual to their Facebook ID." *Id.* (emphasis added). Therefore, Plaintiff's own case supports SNHH's argument that an IP address is not enough, and more is required – something like a Facebook ID that directly identifies an ***individual*** as opposed to a device.

Furthermore, at least one court has applied *Becerra's* reasoning in an analytics technology case. In *Rand v. Eyemart Express, LLC*, the plaintiffs alleged the use of the Meta Pixel on an eyecare website constituted a violation of HIPAA's privacy rule. 2024 WL 4376162, at *4 (N.D. Tex. Oct. 1, 2024). The court disagreed, citing *Becerra* and concluding that the crux of determining

[1] Also, the document cited by Plaintiff is a Report and Recommendation currently being challenged by the parties, and not yet adopted by the Court.

whether IIHI was shared was whether an individual's subjective intent for visiting a webpage, which the website owner could not know, could be ascertained via his website queries. *Id.* Even the fact that a particular person (as opposed to that a particular device was used) searched for a particular medical condition, that still does not establish the person has that medical condition. *Id.*

Moreover, even if Plaintiff were correct that an IP address combined with his public webpage browsing activity could constitute PHI, he still has not alleged in sufficient detail what health information was allegedly disclosed. Plaintiff alleges that at some point he searched for unnamed medical providers and information about an allergy clinic and dermatology on the SNHH website. Compl. ¶¶ 20, 40. This type of generic pleading has been rejected by other courts, no matter how strenuously Plaintiff attempts to stretch his allegations. As one court noted, "courts around the country" have dismissed similar claims for "failure to adequately describe the HIPAA-protected information." *Patrick Santoro, Jessica Landis, v. Tower Health*, No. CV 22-4580, 2024 WL 4771398, at *4 (E.D. Pa. Nov. 13, 2024). Plaintiff has no answer to SNHH's point that most of his Complaint is based on a supposed hypothetical "example patient." Compl. ¶¶ 34-39. Moreover, in the two places where Plaintiff provides images and asserts it was his own information that was provided, those images do not include any indication that his own IP address was transmitted, undermining his own (legally incorrect) argument. Plaintiff simply does not allege that Defendant shared identifiable information with any third parties.

**B. SNHH was not encouraging the alleged recipient, Google, to purchase a product**

Plaintiff seems to misunderstand SNHH's arguments with respect to the marketing element of the claim. RSA 332-I defines "marketing" as making "a communication about a product or service that encourages recipients of the communication to purchase or use the product or service." *Id.* §1(II)(d). First, Plaintiff offers almost no allegations in the Complaint related to marketing at all. He generally states that SNHH's website's terms of use refer to Google AdWords. Compl. ¶ 30.

He also includes a screenshot of general advertisements for SNHH (without explaining where they came from) but seems to have no response to SNHH's point that none of the ads there seem to have anything to do with Plaintiff specifically. Compl. ¶ 66. All Plaintiff is able to say here is that Google Analytics "inherently functions for marketing objectives" – but that is based on nothing more than his own conclusory allegation to that effect. Opp. Br. at 10; Compl. ¶ 65.

More to the point, however, the statute defines a marketing disclosure to be one made about a product or service that encourages the ***recipient*** of the communication to purchase or use the product or service. Plaintiff's own allegations make quite clear that the recipient of the alleged "disclosure" was Google – indeed that is what makes them problematic in his mind. Yet, he does not allege that SNHH was encouraging Google to purchase any product or service from it, nor could he. Similarly, there was no communication about a product or service at all. Plaintiff's allegations surround what he considers to be his health information being disclosed, something he himself clearly does not consider a "product" or "service." Therefore, even if Plaintiff did establish a disclosure of his identifiable medical information (which he did not for all of the reasons discussed above), he still has not alleged that disclosure was for marketing, i.e. to encourage Google to purchase a product or service from SNHH.

**C. Plaintiff does not allege that any third-party actually viewed his medical information**

Plaintiff's argument with respect to the requirement that there be "disclosure" of information again undermines his own claim. He seemingly concedes that any information allegedly "shared" is not viewed by a third-party. Instead, Plaintiff asserts the definition of disclosure should require an "affirmative act," because that definition has been adopted under CMIA (a California statute). *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 923 (S.D. Cal. 2020). However, no "affirmative act" is alleged here. *See id.* (finding no "affirmative act" where there was no allegation of intent to communication information).

## II. Plaintiff's Activity is not a Telecommunication and Nothing Was Intercepted

Plaintiff's opposition largely hinges on asking the Court to simply take his word for it and find that merely alleging use of the Google Analytics tool pleads a claim, while ignoring the specific allegations of his Complaint and the language of the New Hampshire Wiretap Statute. RSA § 570-A:1 In doing so, he alternates between arguing that the California Invasion of Privacy Act ("CIPA") and the Electronic Communications Privacy Act ("ECPA") are inapposite and not helpful in interpreting the New Hampshire statute, then citing cases interpreting those same statutes when it suits him.

### A. Web browsing activity is not a person-to-person conversation

Plaintiff's argument that his "online activity" constitutes a telecommunication under the statute is largely based on the conclusory allegation in his Complaint that "evolving legal interpretations by New Hampshire and Massachusetts courts" support his position – albeit without identifying those supposed "evolving" interpretations. Compl. ¶ 72; Opp. Br. at 15. However, and notably, the most recent legal interpretations reject Plaintiff's argument. The Massachusetts SJC recently analyzed Massachusetts' wiretapping statute in the context of a hospital website claim. *Vita v. New England Baptists Hosp.*, 243 N.E.3d 1185 (Mass. October 24, 2024). In *Vita*, the plaintiff similarly asserted a wiretap claim based on a hospital's use of tools like Google Analytics on its public website. *Id.* at 1188. As here, she alleged that such use constituted a "wiretapping" of her browsing activity, such as searches, using "find a doctor" functionality, and similar activity. *Id.*

The SJC held such activity ***did not*** qualify as a communication protected by the statute. *Id.* at 1199 (emphasis added). It held the key to a wiretap claim is that the intercepted information be actual person-to-person communication, regardless of format, and not something like browsing activity, sent between a user's web browser and website server. *Id.* "Browsing and accessing the information published on a website is ***significantly different*** from having a conversation or

sending a message to another person." *Id.* (emphasis added). Thus, "the user is not communicating with another person but instead interfacing with pre-generated information on a website … and [is] not engaging in a conversation but accessing published information and databases." *Id.*

The SJC's conclusion is consistent with the New Hampshire Supreme Court's treatment of this state's statute, including the case on which Plaintiff relies. *State v. Lott*, 152 N.H. 436, 437-38, 879 A.2d 1167 (2005). In *Lott* the court addressed an argument as to whether instant messages had been impermissibly wiretapped. *Id.* First, the meaning of "telecommunication" was not addressed, and the court appears to have silently assumed, without deciding, that the communications there fell within the definition. *Id.* Nonetheless, as Plaintiff recognized, the allegedly wiretapped information there was an instant messaging conversation. *Id.* That is, it was a ***conversation***, albeit in text form, between two actual humans. *Id.* In short, to be a "telecommunication" within the ambit of the wiretap statute, the information in question must be part of a ***person-to-person conversation***, not something like web browsing activity. Thus, if the legal interpretations have "evolved" as Plaintiff asserts, they have confirmed that the same kind of communication as always is protected – a person-to-person conversation. The fact that the medium for that conversation may have changed (e.g. text messages or instant messaging) hasn't modified the basic requirement that the nature of the interaction taking place is the determining factor.

Plaintiff does not argue that any kind of conversation he had with another individual was wiretapped. Instead, he argues that all "online activity" is a telecommunication under RSA § 570-A. *See* Opp. Br. at 21. That is, his claim is based on the exact kind of non-conversational information the *Vita* Court found was not sufficient to support a wiretap claim, and which the New Hampshire Supreme Court has never found to fall within the definition of telecommunication. He offers no basis for expanding the definition beyond the kinds of conversational communications

that have always been protected. Thus, his alleged website browsing activity does not meet the definition of telecommunications.

**B. Plaintiff's allegations show the information came "from a tracking device"**

As SNHH noted in its brief, a "communication made through a tone-only paging system or from a tracking device" is not a "telecommunication" covered by the statute. RSA § 570-A:1(I). SNHH also pointed out that Plaintiff himself repeatedly calls Google Analytics a "tracking device" or "tracking technology." Plaintiff has not disputed this. Instead, despite the statute's use of the "through … or from a tracking device" language, Plaintiff insists that the communication must come "from" a tracking device to be excluded from the definition of telecommunication. However, he offers no support or explanation for this conclusion, which itself is reason enough to dismiss it.

Regardless, Plaintiff's Complaint itself shows that the communications in question are sent "from" Google Analytics in any event. He asserts that Google Analytics gathers his activities on the website, and his IP address, and then sends that information to Google. Compl. ¶ 3, 24, 29. Moreover, the image Plaintiff shares in paragraph 40 of his Complaint most clearly demonstrates the communications coming "from" Google Analytics. That paragraph shows a screenshot of the Network Traffic Inspector within the "Developer Tools" view in the Google Chrome browser. Compl. ¶ 40. This view has been filtered to show the traffic being sent ***from*** the Google Analytics tool, as shown on the left-hand side of the image, halfway from the top, where it indicates that this is showing traffic from the "analytics.js" script (and further showing in the filter box in the top left that the user has filtered this to show "google-analytics" traffic). On the right-hand side, this image shows that the information in the network traffic coming ***from*** Google Analytics is exactly what he complains about being "intercepted" – the text "AcceptNewPatients" and "male" along with "dermatology." In short, even accepting Plaintiff's own construction of the statute's definition, he has alleges (1) information is not a telecommunication if it comes from a tracking device; (2)

Plaintiff agrees that Google Analytics is a tracking device; and (3) the most detailed factual allegations in the Complaint establish the information in question came ***from*** Google Analytics.

**C. Plaintiff's own allegations show there was no "interception"**

SNHH explained in detail that Plaintiff's own factual allegations, if credited as they must be at this posture, demonstrate that at most SNHH receives information from him, and some of that information is separately then transmitted to Google. Plaintiff has no response to this, nor does he explain how that can be an "interception." Instead, his only response is to confusingly cite several cases addressing claims under CIPA and ECPA along with the assertion such cases are "legion" only to immediately turn around and state that the cases SNHH cited explaining what constitutes an interception are "inapposite" because they involve ECPA and CIPA. He cannot have it both ways, and ultimately does not explain how the allegations in ***his*** Complaint, addressed by SNHH in its opening brief, demonstrate an interception under any definition.

In any event, RSA § 570-A has the same definitions of "intercept" as does the ECPA and many other state wiretap statutes. *Compare* RSA 570-A:1(III) with 18 U.S.C. § 2510(5)(a)–(b). Neither uses the phrase "in transit" and yet "federal courts have uniformly concluded that the [ECPA] covers only 'contemporaneous' interceptions of communications, which are understood as the acquisition of communications in transit." *Sparks v. State*, 100 N.E.3d 715, 719 (Ind. Ct. App. 2018) (collection cases). As explained in more detail in SNHH's initial brief, Plaintiff's own Complaint clearly alleges that there is a transmission of information from him to SNHH's web server, and a separate transmission from SNHH to Google. *See* Compl. ¶¶ 32-40. He fails to explain how ***those*** allegations establish an interception. For that matter, he does not explain what he believes "intercept" means under the New Hampshire statute, seemingly reading it as a superfluous requirement under the statute. Simply put, Plaintiff's Complaint offers facts which demonstrate the opposite of an "interception," and his opposition offers nothing to the contrary.

**D. Plaintiff consented to SNHH recording the information he sent to its web server**

Plaintiff argues that *Lott* is limited to instant messaging because consent is an inherent function of that form of communication. Opp. Brief 29. But this ignores the basic reality of what it means to use a website. Plaintiff does not disagree that his activity was necessarily captured for the website to function. Instead, he argues that he did not consent to his clicks being "recorded" in a different fashion or seen by a different person than he believed he was communicating with. However, he ignores that that is exactly what occurred in both *Lott* and *Moscone*. In both cases, the individuals believed they were having an instant messaging conversation with minors, and understood those communications could be captured. When it turned out that they were in fact speaking to undercover law enforcement officers, that did not change the nature of their consent. Yet that is exactly what Plaintiff argues here. Therefore, even if Plaintiff had alleged an interception of a communication (which he has not), he nonetheless consented to that "wiretap."

For all of the foregoing reasons Plaintiff's Complaint should be dismissed with prejudice.

Dated: November 22, 2024

Respectfully submitted:

*/s/ Kevin G. Collimore*
Kevin G. Collimore (NH Bar #11259)
Cullen Collimore Shirley PLLC
37 Technology Way | Suite 3W2
Nashua, NH 03060
Tel: 603-881-5500
Fax: 603-881-5507
Email: kcollimore@cullencollimore.com

*Michael W. Jervis** (PA Bar #316515)
*Aarthi Manohar**(PA Bar #318874)
Mullen Coughlin LLC
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
Tel: 267-930-4498
Fax: 267-930-4771
Email: mjervis@mullen.law
**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I, Michael W. Jervis, caused the foregoing *Reply in Support of Defendants' Motion to Dismiss* to be served on all counsel of record via the Court's ECF system on November 22, 2024.

/s/ *Michael W. Jervis*